UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHARKEISHA MACK,

      Plaintiff,                                   Hon. Ellen S. Carmody

v.                                                        Case No. 1:16-CV-1149

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. The parties subsequently agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons articulated herein, the Commissioner's decision is **vacated and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 26 years of age on her alleged disability onset date. (PageID.169). She completed high school as an "educable, mentally impaired" student and worked previously as a child monitor. (PageID.41, 46). Plaintiff applied for benefits on November 22, 2013, alleging that she had been disabled since January 1, 2012, due to bi-polar disorder, anxiety, anger problems, emotional impairment, and learning difficulties. (PageID.169-74, 186). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.79-167). On January 26, 2015, Plaintiff appeared before ALJ James Prothro with testimony being offered by a vocational expert. (PageID.54-77). In a written decision dated April 17, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.37-48). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (PageID.25-30). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

# ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) mood disorder (not otherwise specified); (2) bi-polar II disorder; (3) post-traumatic stress disorder (PTSD); (4) personality disorder; (5) intermittent explosive disorder; and (6) marijuana abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.40-44). With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform work at all exertional levels subject to the following limitations: (1) she is limited to simple, repetitive tasks; (2) she can have occasional interaction with the public, co-workers, and supervisors; and (3) she cannot perform fast-paced work. (PageID.44).

The ALJ found that Plaintiff cannot perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a

significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 3,550 jobs in the state of Michigan and approximately 157,000 jobs nationwide that an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.68-73). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.         **Section 12.05 of the Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that she is entitled to relief because the ALJ improperly determined that she does not satisfy Section 12.05 (Intellectual Disability) of the Listing. Section 12.05 of the Listing provides, in relevant part, the following:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A.    Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow

> directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or
>>
>> 2. Marked difficulties in maintaining social functioning; or
>>
>> 3. Marked difficulties in maintaining concentration, persistence or pace; or
>>
>> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2015).

Specifically, Plaintiff asserts that she satisfies section 12.05(C). As noted above, to satisfy subsection (C), Plaintiff must demonstrate a valid IQ score of 60 through 70 as well as the existence of an additional impairment which imposes significant work-related limitation of function. Plaintiff must also establish that she satisfies the "diagnostic description" of intellectual disability articulated in the introductory paragraph of Section 12.05. *See* 20 C.F.R., Part 404, Subpart P,

Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05); *Cooper v. Commissioner of Social Security*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007); *see also, Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that she experienced deficiencies in adaptive functioning prior to age 22).

Defendant concedes that Plaintiff suffers from an additional impairment which results in significant work-related limitation of function. (ECF No. 11 at PageID.640). The question, therefore, is whether Plaintiff satisfies the diagnostic description of intellectual disability and possesses a valid IQ score between the specified range. With respect to this latter requirement, the ALJ concluded that "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70. . ." (PageID.43). This conclusion is not supported by substantial evidence.

On March 26, 2008, Plaintiff participated in a consultive examination conducted by Neil Reilly, Limited Licensed Psychologist, and Dr. James Lozer, Licensed Psychologist. (PageID.267-71). Plaintiff was diagnosed with "mood disorder NOS with mixed anxiety and depression and anger management problems." (PageID.271). As part of this examination, Plaintiff participated in intelligence testing the results of which revealed that she possessed a verbal IQ of 67, a performance IQ of 74, and a full-scale IQ of 67. (PageID.270). Plaintiff's performance placed her "in the mild mentally retarded" range of functioning. (PageID.270). Reilly and Lozer concluded that Plaintiff's "effort on the testing was good, and the results obtained are considered valid." (PageID.270). The ALJ, however, concluded that these IQ test results were "not valid for Social

8

Security purposes." (PageID.43). The reasons offered by the ALJ for this conclusion are not supported by substantial evidence.

First, the ALJ concluded that Plaintiff's level of functioning was inconsistent with the IQ scores in question. (PageID.43). Specifically, the ALJ noted that Plaintiff "has had adaptive functioning that has allowed her to raise three children, shop, cook, socialize, ride the bus, write letters, use a computer, communicate on Facebook, complete a high school education (through a special education program), attend Work First, attend a Goodwill training session, and earn substantial gainful activity level earnings in 2011 as a babysitter." (PageID.43). In support of this conclusion, the ALJ cites to a December 8, 2013 function report completed by Plaintiff and the results of a January 25, 2011 consultive examination. (PageID.43, 206-13, 293-98).

The ALJ has exaggerated Plaintiff's level of functioning. The ALJ mischaracterized the function report Plaintiff completed and ignored the contemporaneous report completed by Plaintiff's mother which suggests that Plaintiff's ability to function was much more impaired than the ALJ suggested. (PageID.194-201, 206-13). Likewise, the results of Plaintiff's January 25, 2011 consultive examination do not suggest that Plaintiff is capable of functioning at the level suggested by the ALJ. (PageID.293-98). Furthermore, the type of activities the ALJ identified are not necessarily inconsistent with the IQ scores in question. *See, e.g., Dragon v. Commissioner of Social Security*, 470 Fed. Appx. 454, 463 (6th Cir., Mar. 26, 2012) (activities such as parenting, graduating high school, use of public transit, making change, doing laundry, cleaning, and limited reading comprehension not necessarily inconsistent with an IQ below 70); *Kaddo v. Commissioner of Social Security*, - - - F.Supp.3d - - -, 2017 WL 764612 at *5 (E.D. Mich., Feb. 28, 2017) (rejection of claimant's IQ scores, which ranged from 69-73, on ground that she was able to occasionally attend classes at a community college was insufficient). Finally, the ALJ's conclusion in this regard fails

9

to take into consideration Plaintiff's psychiatric hospitalizations suggesting a diminished ability to function. (PageID.303-33).

The ALJ next asserts that "the claimant's school records make no mention of the claimant having decreased intellectual functioning." (PageID.43). This statement is quite puzzling given that just two pages earlier the ALJ accurately noted that Plaintiff "received special education services as an 'educable, mentally impaired' student." (PageID.41). Plaintiff's school records also contain the results of intelligence testing, conducted in 2000, that indicate that Plaintiff possessed a verbal IQ of 62, a performance IQ of 70, and a full scale IQ of 63. (PageID.596-97).

Lastly, the ALJ notes that following a January 25, 2011 consultive examination, Dr. Lozer concluded that Plaintiff "appears to have an average IQ." (PageID.295). This conclusion was not based upon the results of any testing, unlike Dr. Lozer's 2008 conclusion that Plaintiff suffered from mild mental retardation. Dr. Lozer offered no explanation why his assessment of Plaintiff's IQ changed in just three years. Likewise, the ALJ offered no rationale for accepting the speculative opinion that Plaintiff possesses an average IQ over the results of formal testing that Dr. Lozer deemed to be an accurate and valid assessment of Plaintiff's IQ. In sum, the ALJ's rationale for finding invalid Plaintiff's 2008 IQ scores is not supported by substantial evidence. As for whether Plaintiff satisfies the diagnostic description of intellectual disability, the ALJ does not appear to have addressed that particular question.

II.     **Remand is Appropriate**

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social*

*Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644.

Plaintiff bears the burden to demonstrate that her impairment meets a Listing. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). While the ALJ's decision is not supported by substantial evidence, Plaintiff has not carried her burden to establish that she satisfies the requirements of Section 12.05(C) of the Listing of Impairments. Furthermore, assessment of Plaintiff's claim requires the resolution of factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.

Date: August 7, 2017                  /s/ Ellen S. Carmody
                                                               ELLEN S. CARMODY
                                                               United States Magistrate Judge